## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:15-CR-3** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **ARMANDO ENRIQUE DELGADO (4),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Armando Enrique Delgado ("Armando")[1] moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (Doc. 481). He also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. (Doc. 479). Armando claims that the evidence adduced at trial is insufficient to sustain the six counts of conviction. He further maintains that prosecutorial misconduct necessitates a new trial. We will grant in part and deny in part the motion for judgment of acquittal and deny the motion for a new trial.

## I.    Factual Background and Procedural History

In January 2015, a federal grand jury returned a three-count indictment charging Albert Eliezer Martinez ("Albert") with sex trafficking of minors and interstate prostitution. By way of a superseding indictment returned two months later, the grand jury added five codefendants and four additional counts. The superseding indictment charges Armando in all seven counts, which include sex

---

[1] We refer to several defendants by their first names for clarity purposes only, as there are two defendants in the above-captioned case with the last name "Delgado" and two defendants with the last name "Martinez."

trafficking of minors, 18 U.S.C. § 1591(a) (Count 1); transportation of an individual to engage in prostitution, 18 U.S.C. § 2421(a) (Count 2); transportation of a minor to engage in prostitution, 18 U.S.C. § 2423(a) (Count 3); conspiracy to transport an individual to engage in prostitution in violation of Section 2421, 18 U.S.C. § 371 (Count 4); conspiracy to transport a minor to engage in prostitution in violation of Section 2423(a), 18 U.S.C. § 2423(e) (Count 5); conspiracy to distribute and possess with intent to distribute oxycodone (Percocet), cocaine, heroin, and marijuana, 21 U.S.C. § 846 (Count 6); and distribution and possession with intent to distribute oxycodone, 21 U.S.C. § 841(a)(1) (Count 7).[2]

Prior to trial, two defendants pled guilty. One of those defendants was Albert, who later testified at trial for the government. Armando, along with codefendants Antonio Delgado ("Antonio"), Anthony D'Ambrosio ("D'Ambrosio"), and Keanu Martinez ("Keanu") chose to go to trial. A jury trial commenced on December 5, 2017. After jury selection but before the start of the government's case in chief, Keanu entered into a plea agreement and pled guilty to Count 3. Keanu, like his father Albert, also testified at trial for the government. Following Keanu's guilty plea, the trial proceeded against Armando, Antonio, and D'Ambrosio only.

At the close of the government's case, all three defendants moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The court granted D'Ambrosio's and Armando's Rule 29 motions in part, dismissing

---

[2] Counts 1, 2, 3, and 7 include aiding and abetting charges under 18 U.S.C. § 2(a).

Count 3 of the superseding indictment against them with the government's consent. The court granted Antonio's Rule 29 motion in full, dismissing all charges against him because the evidence showed that he was a juvenile at the time of the alleged acts and conspiracies. The court permitted the remaining charges—Counts 1, 2, 4, 5, 6, and 7—against D'Ambrosio and Armando to go to the jury. The jury convicted both D'Ambrosio and Armando on all six counts.

Following his conviction, Armando timely renewed his motion for judgment of acquittal and moved separately for a new trial pursuant Federal Rule of Criminal Procedure 33. Armando contends that there was insufficient evidence to sustain his six convictions. In his Rule 33 motion, he argues that a new trial is warranted due to discovery violations and prosecutorial misconduct during closing arguments. The motions are fully briefed and ripe for disposition.

## II. <u>Legal Standards</u>

### A. **Rule 29 Motion for Judgment of Acquittal**

On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial. <u>United States v. Caraballo-Rodriguez</u>, 726 F.3d 418, 431 (3d Cir. 2013) (*en banc*) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)); <u>see</u> <u>also</u> <u>United States v. Freeman</u>, 763 F.3d 322, 343 (3d Cir. 2014). The court must view the evidence in a light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision." <u>Caraballo-Rodriguez</u>, 726 F.3d at 430 (quoting <u>United States v. Gambone</u>, 314 F.3d

163, 170 (3d Cir. 2003)).  Under this highly deferential standard of review, it is not

the court's task to "act as the thirteenth juror," weigh credibility, assign weight to

evidence, or "substitute [its] judgment for that of the jury."  Id. (citations omitted).

The decision to overturn a conviction based on insufficient evidence may only be

made "where the prosecution's failure is clear," United States v. Leon, 739 F.2d 885,

890 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), or where

the verdict "fall[s] below the threshold of bare rationality," Caraballo-Rodriguez,

726 F.3d at 431.

### B.      Rule 33 Motion for a New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, "the court may

vacate any judgment and grant a new trial if the interest of justice so requires."

FED. R. CRIM. P. 33(a).  Granting or denying a motion for a new trial "lies within the

discretion of the district court."  United States v. Cimera, 459 F.3d 452, 458 (3d Cir.

2006).  A court evaluating a Rule 33 motion does not view the evidence favorably to

the government but instead must "exercise[] its own judgment in assessing the

Government's case."  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)

(citation omitted).  Rule 33 motions are disfavored and should be "granted sparingly

and only in exceptional cases."  United States v. Silveus, 542 F.3d 993, 1005 (3d Cir.

2008) (quoting Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)).  Exceptional

cases include those in which trial errors "so infected the jury's deliberations that

they had a substantial influence on the outcome of the trial."  United States

v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993) (citation omitted).

**III.   Discussion**

Armando argues that the evidence adduced at trial is insufficient to sustain a conviction on Counts 1, 2, 4, 5, 6, and 7.  He also claims a new trial is required due to improper government conduct both before and during trial.  We will address his insufficiency claims *seriatim* before turning to his motion for a new trial.

**A.   Sufficiency of the Evidence**

Armando's sufficiency claims are neither targeted nor complex.  Most of his arguments consist of a single paragraph stating that the government proffered insufficient evidence to prove certain elements of the crimes of conviction.  Nevertheless, in the context of a criminal prosecution where the government has the burden to prove each element of a crime beyond a reasonable doubt, such bare-bones challenges must be answered by the government and considered by the court.  We take each challenged conviction in turn.

**1.   *Count 1 – Sex Trafficking of Minors, 18 U.S.C. § 1591(a)***

Armando argues that there was no evidence adduced at trial to establish that he transported or aided and abetted in transportation of a minor for prostitution.  He also contends that the government presented no evidence to show the required "knowing" or "in reckless disregard" *mens rea* in relation to the victim's underage status.  The government's response to Armando's first challenge is abbreviated and unavailing.  Rather than citing to record evidence, the government simply posits that "the evidence presented at trial sufficiently established" that Armando violated Section 1591(a).  (Doc. 559 at 14).  Moreover, the government offers no response to Armando's *mens rea* argument.

In light of the United States' tenuous response, we have performed our own exhaustive review of the trial record. We find a more fundamental problem with Count 1 that is tangentially related to the insufficiency argument—constructive amendment of the indictment. Constructive amendment occurs "when evidence, arguments, or the district court's jury instructions effectively amend[] the indictment by broadening the possible bases for conviction from that which appeared in the indictment." United States v. Centeno, 793 F.3d 378, 390 (3d Cir. 2015) (quoting United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007)). Constructive amendment of an indictment violates a criminal defendant's "basic right" of the Fifth Amendment's grand jury guarantee. McKee, 506 F.3d at 229.

The version of 18 U.S.C. § 1591 in effect at the time of Armando's indictment makes it a crime for an individual to

> knowingly in or affecting interstate or foreign commerce
> . . . recruit[], entice[], harbor[], transport[], provide[],
> obtain[], or maintain[] by any means a person . . . or
> benefit[], financially or by receiving anything of value,
> from participation in a venture which has engaged in [the
> foregoing actions] knowing, or in reckless disregard of the
> fact . . . that the person has not attained the age of 18
> years and will be caused to engage in a commercial sex
> act[.]

18 U.S.C. § 1591(a) (2012). Subsection (c) of this statute imposes strict liability for any defendant who "had a reasonable opportunity to observe" the minor victim, "thus relieving the government's usual burden to prove knowledge or reckless disregard of the victim's underage status." United States v. Smith, 662 F. App'x 132, 136 (3d Cir. 2016) (nonprecedential) (quoting United States v. Robinson, 702 F.3d 22, 26 (2d Cir. 2012)); see also 18 U.S.C. § 1591(c) (2012). Taken together,

subsections (a) and (c) provide three different methods for imposing criminal liability: establishing beyond a reasonable doubt that the defendant (1) knew the victim was under 18 years of age; (2) recklessly disregarded that fact; or (3) had a reasonable opportunity to observe the minor victim. <u>Robinson</u>, 702 F.3d at 32.

The instant superseding indictment does not charge Armando (or any defendant) under the strict liability language of Section 1591(c). Count 1 instead alleges that Armando, Albert, D'Ambrosio, Antonio, and Keanu trafficked a minor victim for commercial sex acts "*knowing and in reckless disregard of the fact* that this individual had not attained the age of 18 years[.]" (Doc. 23 at 1-2) (emphasis added). The superseding indictment explicitly invokes only Section 1591(a) as its statutory authority—"all in violation of Title 18, United States Code, Sections 1591(a) and 2." (<u>Id.</u> at 2).

The government, perhaps anticipating a constructive amendment challenge, avers in its briefing that "clearly, in this case, the United States did not proceed under § 1591(c) in the Superseding Indictment, did not make this argument at any point during the trial and *did not request an instruction on this statute*." (Doc. 559 at 13 n.2) (emphasis added). To the contrary, the United States expressly requested that the jury be instructed on Section 1591(c). (<u>See</u> Doc. 194 at 15 ("Government's Proposed Jury Instruction No. 7," citing 18 U.S.C. § 1591(c))). And the court—receiving no objection from any defendant—included subsection (c)'s language when it instructed the jury, to wit: "If the government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained, or maintained, then

7

the government does not have to prove that the defendant knew that a person had not attained the age of 18 years."  (12/15/17 Trial Tr. 152:10-15).

This instruction constructively amended the superseding indictment because it "materially modified an essential element . . . by transforming the offense with which the indictment charged [Armando] from one requiring a specific mens rea into a strict liability offense."  United States v. Lockhart, 844 F.3d 501, 515-16 (5th Cir. 2016).  Given the court's instruction, "there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged."  United States v. Repak, 852 F.3d 230, 257-58 (3d Cir. 2017) (quoting United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006)).

Lockhart, although not binding on this court, is directly on point.  There the indictment charged the defendant under 18 U.S.C. § 1591(a) and (b), alleging that he "kn[ew] and . . . reckless[ly] disregard[ed] . . . the fact that . . . A.N.J., had not attained the age of eighteen years (18)," but did not include subsection (c)'s "reasonable opportunity to observe" language.  Lockhart, 844 F.3d at 515 (alterations in original).  The trial court's subsequent jury instructions, however, incorporated that language.  Id.  The Fifth Circuit held that the trial court's instructions had constructively amended the indictment and that, under the record facts, it was plausible that the jury had convicted the defendant on this alternative strict liability theory.  Id. at 516.

So too it is in the instant case.  Count 1 of the superseding indictment charges Armando with trafficking a minor for prostitution "knowing and in reckless

disregard of the fact" that the victim was underage, but it does not contain a citation to subsection (c) or invoke the "reasonable opportunity to observe" language. (Doc. 23 at 1-2). There is a paucity of evidence regarding Armando's involvement with any minor victim, let alone evidence that would tend to suggest that Armando knew or recklessly disregarded that victim's underage status. After combing through the nearly 2,000 pages of testimony and relevant exhibits, only the testimony of A.B. links Armando to transportation of a minor for prostitution. A.B. became involved with the prostitution organization in 2013 when she was 17 years old. (12/11/17 Trial Tr. 69:12). She testified that she knew Armando as a driver for the organization and that he had driven her to several "appointments" in Harrisburg, Pennsylvania. (Id. at 86:18-87:5).

Unlike other codefendants, there is little in the record suggesting that Armando knew A.B. was a minor or recklessly disregarded that fact.[3] The only possible evidence implicating Armando's *mens rea* was the testimony of Francis Michael Simmons ("Simmons"), a prison informant who had spoken with Armando in prison after Armando's indictment and arrest. (See 12/12/17 Trial Tr. 116:16-117:3). Simmons testified that Armando was "concerned" because two of the girls involved in the prostitution ring "were juveniles" and that Armando knew that two of the victims he worked with were underage. (Id. at 124:4-9, 125:6-22). It is

---

[3] For example, there is evidence demonstrating that several codefendants personally knew the minor victims for many years or had been involved in situations where the minors could not rent hotel rooms due to their underage status. This type of evidence could establish a "knowing" or "reckless disregard" *mens rea*.

possible that the jury inferred from Simmons' testimony that Armando knew A.B. was underage when he transported her for commercial sex acts. But it is equally possible that the jury convicted Armando on Count 1 because driving A.B. to several prostitution appointments could provide "a reasonable opportunity to observe" a minor victim. Because the government cannot show "with certainty" that the jury did not convict Armando based on the improper jury instruction, the conviction on Count 1 must be reversed. McKee, 506 F.3d at 231-32 (citations omitted).[4]

>    2.    *Count 2 – Transportation of an Individual to Engage in Prostitution, 18 U.S.C. § 2421(a)*

Armando next challenges the sufficiency of the evidence on Count 2, transportation of an individual to engage in prostitution. This statute has two elements: *first*, that the defendant knowingly transported a person across a state line; and *second*, that the defendant transported the person with the intent that such person engage in prostitution. 18 U.S.C. § 2421(a).

Armando's sufficiency challenge on Count 2 is meritless. The record is replete with evidence establishing that Armando transported or aided and abetted in the transportation of victims to Florida for prostitution purposes. For example, Jasmine Saunders testified that Armando worked for the prostitution organization

---

[4] Retrial on Count 1 is permissible only if the government presented sufficient evidence to sustain a conviction on this charge. Id. at 232. Because the testimony of A.B. and Simmons, viewed in a light most favorable to the government, is sufficient to establish the elements of an offense under 18 U.S.C. § 1591, Armando may be retried on this count. Id.

as a "body guard" and would also "ride with" the girls. (12/8/17 Trial Tr. 15:21-16:12, 22:21-22). She recounted that Armando drove with her and several other girls to Florida for stripping and prostitution activities. (Id. at 16:13-19, 23:14-16, 27:24-28:2, 40:9-13, 41:21-23, 57:5-10, 60:16-19). Kelsey McMaster ("McMaster") testified that Armando went to Florida with her and several other women and while there drove McMaster to "a couple calls," *i.e.*, appointments to engage in prostitution. (Id. at 77:5-19, 98:14-99:7). Simmons likewise testified that Armando claimed to have driven to Florida with Albert and several girls and that, while in Florida, some of the girls were "having sex for money" and drugs. (12/12/17 Trial Tr. 122:7-18). Armando also gave a handwritten document to Simmons while incarcerated indicating that Armando and Albert and "four females" had traveled to Florida, that Armando had driven some of the way, and that Armando believed Count 2 of the superseding indictment was based on this trip. (Id. at 121:24-122:23; Gov't Ex. 31). A rational juror could easily conclude that Armando transported or aided and abetted in the transportation of a person across state lines with the intent that said person engage in prostitution. Armando's Rule 29 motion will be denied as to Count 2.

### 3. *Conspiracy Charges – Counts 4, 5, and 6*

Armando was found guilty of participating in three separate conspiracies: conspiracy to transport an individual to engage in prostitution (Count 4), conspiracy to transport a minor to engage in prostitution (Count 5), and conspiracy to distribute and possess with intent to distribute various controlled substances (Count 6). Each of these conspiracies has a unique objective, but otherwise consists

of the same basic elements: (1) that two or more persons agreed to commit an offense; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its unlawful objective and intending to join together with at least one other alleged conspirator to achieve that objective. See THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTIONS §§ 6.18.371A, 6.21.846B. Count 4 is the only conspiracy charge that requires a fourth element, that an "overt act" was performed by a member of the conspiracy during its existence and to further its objectives. See id. §§ 6.18.371A, 6.18.371F.

### a.    Count 4 – Conspiracy to Transport an Individual to Engage in Prostitution in Violation of Section 2421(a), 18 U.S.C. § 371

Armando first challenges the government's proof on the conspiracy charge in Count 4. He generally attacks the sufficiency of the evidence regarding the substantive offense—violation of 18 U.S.C. § 2421(a). This tactic is unavailing. Proving a conspiracy does not require the government to prove commission of the underlying crime, viz., achievement of the conspiracy's objective. United States v. Salahuddin, 765 F.3d 329, 341 (3d Cir. 2014). Conspiracy is an inchoate offense that is distinct from the underlying substantive crime and requires different proof. Id.

The government's response is unhelpful to our disposition. On multiple occasions, the United States mixes up the counts of the superseding indictment and

the crimes charged therein, making its briefing difficult to follow.[5] As best we can

tell, the government's entire argument in response to Armando's sufficiency attack

on Count 4 is that Armando "would be responsible for the actions of his co-

defendants based on the jury instructions the Court provided, and there was

overwhelming evidence of his co-defendants['] culpability[.]"  (Doc. 559 at 16).

This argument misses the point.  We agree with the general proposition that,

under Pinkerton liability, a member of a conspiracy may be held accountable for

acts of coconspirators that are (1) performed during the existence of the conspiracy,

(2) in furtherance of the conspiracy, and (3) reasonably foreseeable as "a necessary

or natural consequence of the unlawful agreement."  Pinkerton v. United States,

328 U.S. 640, 647-48 (1946); United States v. Bailey, 840 F.3d 99, 112 (3d Cir. 2016).

But the government puts the cart before the horse.  A defendant must first be a

*member* of a conspiracy before he can be held responsible for the actions or

statements of coconspirators.  See United States v. Onque, 169 F. Supp. 3d 555, 576

(D.N.J. 2015).  The question is not whether Armando is guilty of the acts of

codefendants, but whether there was sufficient evidence to prove Count 4's

conspiracy elements.  The government again fails to identify any evidence to

support the jury's verdict, forcing us to scour the record to determine whether a

---

[5] (See Doc. 559 at 15 (incorrectly labeling Count 5 as "Conspiracy to transport an individual to engage in prostitution, 18 USC §2421(a)"); id. at 17 (incorrectly referring to Section 2423(e)'s minor prostitution conspiracy charge as "Count Four," and then incorrectly citing "18 USC §2421(a)")).

rational trier of fact could have convicted Armando of conspiracy to transport an individual to engage in prostitution.

We find that there is sufficient circumstantial evidence to support Count 4. In particular, as described above, several victims testified that Armando traveled with Albert and approximately four women from Pennsylvania to Florida to have the women engage in stripping and prostitution while there. A trip of this sort, which, according to Jasmine Saunders, involved two vehicles, would likely require planning and coordination between Armando and Albert. Simmons also testified that Armando claimed to have traveled to West Virginia with Albert to recruit girls with drug addictions for prostitution. (12/12/17 Trial Tr. 123:12-17). This testimony further demonstrates an agreement between Albert and Armando and intent regarding the prostitution objective of the conspiracy.

Finally, McMaster testified that Armando drove her to prostitution appointments while in Florida, confirming Armando's intent to achieve the out-of-state prostitution objective. Sufficient record evidence thus supports the existence of an agreement to transport an individual in interstate commerce to engage in prostitution, Armando's membership in that agreement, and Armando's knowledge of and intent to achieve the conspiracy's common objective. Moreover, the conspirators committed multiple overt acts, not the least of which include driving to Florida and driving McMaster to prostitution appointments while there. Hence, we will deny Armando's Rule 29 motion as to Count 4.

**b.** **Count 5 – Conspiracy to Transport a Minor to Engage in Prostitution in Violation of Section 2423(a), 18 U.S.C. § 2423(e)**

Count 5 charges Armando with conspiracy under 18 U.S.C. § 2423(e) to transport a minor to engage in prostitution in violation of Section 2423(a). Notably, after the close of the government's case, the court granted Armando's Rule 29 challenge to Count 3—the underlying substantive offense—due to insufficient evidence. (12/15/17 Trial Tr. 4:9-17). Armando contends that the related conspiracy conviction cannot stand because no evidence establishes his membership or participation in any alleged agreement regarding the transportation of minors across state lines for prostitution. We are constrained to agree.

The government points to no case law and almost no evidence to support the conviction on Count 5. The entirety of the United States' argument is that "[t]he record is replete with examples of minors being trafficked out of state on behalf of this organization, such as Keanu Martinez taking [minor] victim D.R. into Maryland and West Virginia for . . . prostitution. Keanu Martinez even confirmed Armando Delgado's responsibilities were to 'hold the money and drive, security.'" (Doc. 559 at 17 (citation omitted)).

We agree that there is substantial evidence establishing an agreement between at least two conspirators to transport minors across state lines for prostitution. Keanu testified that he, Antonio, and an unindicted coconspirator worked together on multiple occasions to take minors to Maryland for prostitution. (12/8/17 Trial Tr. 171:7-15, 174:5-15). Keanu pled guilty to this substantive offense. Minor victim D.R. likewise testified that she went to Maryland with Keanu and

Antonio on several occasions for prostitution. (12/11/17 Trial Tr. 147:13-18). Minor victim A.B. affirmed that she and D.R. worked in agreement with Keanu and Antonio to travel to Maryland for prostitution purposes. (Id. at 82:2-13). This testimony sufficiently establishes the agreement element of the Section 2423(e) conspiracy charge. But the government has not identified, and we cannot find, any direct or circumstantial evidence that would suggest that Armando became a member of this particular unlawful agreement. Nor is there evidence suggesting that Armando had the requisite knowledge of this conspiracy or intent to achieve the common objective of trafficking minors across state lines for prostitution. Indeed, "those having no knowledge of the conspiracy are not conspirators." McKee, 506 F.3d at 241 (quoting United States v. Falcone, 311 U.S. 205, 2010 (1940)).

There is no doubt that Armando was involved in the instant prostitution operation as a driver and as security; the record evidence to that effect is overwhelming. Nevertheless, the superseding indictment charges Armando with three *separate* conspiracies, each with a distinct objective. The objective of the conspiracy in Count 5 is to transport minors across state lines to engage in prostitution. Armando's membership in the broader prostitution ring does not *per se* establish that he was a member of this specific conspiracy or that he had knowledge of the agreement and the intent to further its objectives. As the record is bereft of evidence to substantiate these required conspiracy elements, no rational trier of fact could have found Armando guilty beyond a reasonable doubt. We are

compelled to grant Armando's Rule 29 motion as to Count 5 because "the prosecution's failure is clear." Leon, 739 F.2d at 890.[6]

### c. Count 6 – Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone, Heroin, Cocaine, and Marijuana, 21 U.S.C. § 846

The final conspiracy count, Count 6, charges conspiracy to distribute and possess with intent to distribute controlled substances. The jury convicted Armando on this charge with respect to oxycodone, cocaine, and marijuana. Armando cursorily challenges the sufficiency of the evidence without citation to authority. We find the evidence is more than sufficient for a rational trier of fact to find Armando guilty of violating 21 U.S.C. § 846.

Albert—the admitted leader of the prostitution operation—testified extensively about how distribution of drugs was integral to the organization. (12/7/17 Trial Tr. 21:24-23:18). He explained that he often gave drugs directly to his female victims or to drivers who would in turn give them to the girls. (Id. at 22:9-15). Those drugs included oxycodone (Percocet), cocaine, heroin, MDA, "Molly," and marijuana. (Id. at 22:4, 21-23). He further attested that he gave drugs to both D'Ambrosio and Armando to "supply the girls." (Id. at 23:4-8). Keanu, Albert's son, confirmed that the operation involved drugs, including oxycodone, heroin, cocaine,

---

[6] The Double Jeopardy Clause of the Fifth Amendment bars a new trial when the evidence at the initial trial is insufficient to sustain a guilty verdict thus requiring an acquittal. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Burks, 437 U.S. at 11; McMullen v. Tennis, 562 F.3d 231, 237 (3d Cir. 2009).

"Molly," and marijuana, which were often used as a form of payment. (12/8/17 Trial Tr. 178:17-21, 179:16-24). Victims RaeAnn Horne ("Horne") and Brooklyn Shearer both testified that they received drugs from Albert and D'Ambrosio, including oxycodone, cocaine, and marijuana. (12/8/17 Trial Tr. 111:17-112:20; 12/7/17 Trial Tr. 195:7-196:5). McMaster echoed this testimony, explaining that drugs were often a form of payment for prostitution activities. (12/8/17 Trial Tr. 67:10-14, 68:11-15, 74:15-23, 78:2-23, 79:1-5). According to Simmons, Armando was "pretty adamant that he was selling marijuana." (12/12/17 Trial Tr. 121:17-18). Moreover, in the handwritten document Armando gave to Simmons, Armando wrote "Dilverd [sic] controlled sub[stances]" in the "True" column. (Gov't Ex. 31 at 1).

This evidence clearly establishes a conspiracy under Section 846. It shows existence of an agreement between at least four conspirators to distribute various drugs to female victims, often as a form of payment for prostitution. The evidence also demonstrates Armando's membership and participation in that agreement, as well as his knowledge of the conspiracy and his intent to accomplish its specific objective—the distribution and possession with intent to distribute oxycodone, cocaine, and marijuana. We will deny Armando's Rule 29 motion as to Count 6.

4. ***Count 7 – Distribution and Possession with Intent to Distribute Oxycodone, 21 U.S.C. § 841(a)(1)***

Armando's final sufficiency challenge also fails. As explained above, a conspirator may be held liable for the acts of his coconspirators if those acts are performed during the existence and in furtherance of the conspiracy and are reasonably foreseeable as "a necessary or natural consequence of the unlawful

agreement." <u>Pinkerton</u>, 328 U.S. at 647-48; <u>Bailey</u>, 840 F.3d at 112. As Section III(A)(3)(c) *supra* demonstrates, considerable evidence establishes that Albert and D'Ambrosio, among others, distributed and possessed with intent to distribute oxycodone. The evidence likewise shows that these actions were performed during and in furtherance of the drug and Section 2421 prostitution conspiracies and were reasonably foreseeable. Accordingly, a rational juror could easily find that Armando—a member of these two conspiracies—was liable for the substantive offense of distribution of oxycodone by coconspirators Albert and D'Ambrosio. We will therefore deny Armando's Rule 29 motion as it relates to Count 7.

**B.      Rule 33 Motion for a New Trial**

Armando seeks a new trial on two grounds. He first alleges that the government failed to turn over pertinent discovery material under the Jencks Act, 18 U.S.C. § 3500; Federal Rule of Criminal Procedure 16; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). He also contends that the prosecution misrepresented the testimony of a key witness and made an improper emotional appeal to the jury.[7] Neither argument has merit.

---

[7] Armando's Rule 33 motion also appears to raise a weight-of-the-evidence argument. (<u>See</u> Doc. 479 ¶ 5). Because this claim is completely undeveloped, is referenced only passingly in Armando's reply brief, and contains no citation to authority, (<u>see</u> Doc. 513 at 14-15), we decline to address it. <u>See</u> <u>United States v. Garvey</u>, 588 F. App'x 184, 190 n.6 (3d Cir. 2014) (nonprecedential) (citing <u>United States v. Dupree</u>, 617 F.3d 724, 728 (3d Cir. 2010)).

### 1. ***Alleged Discovery Violations***

Armando claims that the United States committed numerous discovery violations. These purported violations include, *inter alia*, failing to provide witness statements, failing to fully disclose government-witness cooperation agreements and details, and failing to disclose potentially exculpatory documents and interview notes. (See Doc. 479 ¶ 11(A)–(L)).

Under the Jencks Act, "any time that a government witness testifies on direct examination, the defendant is entitled to a copy of 'any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.'" United States v. Maury, 695 F.3d 227, 247 (3d Cir. 2012) (alteration in original) (quoting 18 U.S.C. § 3500(b)(2)). The Act endeavors to provide a defendant the opportunity to review witness statements for impeachment evidence. Id. at 248 (citation omitted). Jencks Act violations are reviewed under a harmless error standard. United States v. Hill, 976 F.2d 132, 141 (3d Cir. 1992).

Pursuant to Brady v. Maryland, due process requires the government to turn over evidence "favorable to the accused" when such evidence is "material either to guilt or to punishment." Brady, 373 U.S. at 87. Evidence is "material" if there is a reasonable probability that, but for the prosecution's failure to disclose the information, "the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A defendant can demonstrate a "reasonable probability" of a different result if the government's suppression of evidence "undermines confidence in the outcome of the trial." Id. (quoting Bagley, 473 U.S. at 678). Finally, under Giglio,

material evidence affecting a witness's credibility must be disclosed when that witness's "reliability . . . may well be determinative of guilt or innocence." <u>Giglio</u>, 405 U.S. at 154 (quoting <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959)).  A new trial is compelled by <u>Giglio</u> only if the witness's false testimony could "in any reasonable likelihood have affected the judgment of the jury." <u>Id.</u> (quoting <u>Napue</u>, 360 U.S. at 271).

One commonality between <u>Brady</u>, <u>Giglio</u>, and the Jencks Act is that a violation does not automatically entitle a defendant to relief.  The defendant must demonstrate some reasonable probability or likelihood of prejudice.  In this regard Armando's claims fall short.  Nowhere in his motion or briefing does he explain how any of the alleged discovery violations affected or reasonably could have affected the outcome of his trial.

For example, Armando contends that investigators took notes during a mid-trial interview with Keanu, but that those notes were never disclosed to defense counsel.  The notes, Armando maintains, would have shown that one of the prosecution's potential witnesses who had testified before the grand jury had lied concerning Armando's involvement with minors.  Armando, however, does not address the fact that this particular witness did not testify at trial.  Nor does he explain how the notes would have provided any more assistance than the already-possessed prison phone recordings in which Keanu outlined to his father what had been discussed during the mid-trial interview.  In short, Armando does not establish how the allegedly withheld notes would have had any effect on the trial.

Armando's claims regarding purported undisclosed agreements or benefits in exchange for testimony are likewise deficient. He contends, for example, that the extent of the deal Simmons received in exchange for testifying—a probability of time served on multiple bank robbery convictions—was only disclosed by the government during trial. Simmons, however, was exhaustively cross-examined regarding his cooperation with the government and forthrightly admitted that he hoped to receive a direct benefit for testifying against Armando and Antonio. (See 12/12/17 Trial Tr. 130:21-133:25, 138:3-140:10, 144:7-150:25, 167:18-17:9). Armando has in no way demonstrated a reasonable probability that a more complete or timely disclosure of Simmons' cooperation or expected benefits could have altered the trial's outcome. The same reasoning applies to Armando's other claims of discovery violations concerning benefits in exchange for testimony or undisclosed documents.

Even assuming Armando's instant allegations are true and that the government's actions contravene Brady, Giglio, or the Jencks Act, Armando has wholly failed to establish how any of these violations could possibly have caused prejudice that would necessitate a new trial. We will deny Armando's motion for new trial on this ground.

### 2. *Alleged Prosecutorial Misconduct During Trial*

Armando's alternate basis for a new trial is that the prosecution made improper and inflammatory comments during summation. A defendant claiming prosecutorial misconduct during closing arguments must establish that the government's statements caused him "substantial prejudice by so infecting the trial

with unfairness as to make the resulting conviction a denial of due process." <u>United States v. Brown</u>, 765 F.3d 278, 296 (3d Cir. 2014) (citation omitted). The court must follow a two-step process, first determining whether the comments were improper and, if they were, applying a harmless error analysis that asks whether it is "highly probable that the error did not contribute to the judgment." <u>Id.</u> (quoting <u>United States v. Mastrangelo</u>, 172 F.3d 288, 297 (3d Cir. 1999)). A "high probability" is one that permits the court to possess a "sure conviction" that the error did not unfairly prejudice the defendant. <u>United States v. Zehrbach</u>, 47 F.3d 1252, 1265 (3d Cir. 1995) (*en banc*).

Armando argues that the prosecutor materially misquoted the testimony of Horne, making it appear that Horne unambiguously testified that Armando drove her to Maryland for prostitution. Horne's testimony, however, was more equivocal, as she stated that she "might have went to Maryland" with Armando. (12/8/17 Trial Tr. 117:5-7). According to Armando, this misrepresentation likely misled the jury and resulted in an unfair conviction.

This claim presumably relates to Armando's conviction on Count 2, transportation of an individual in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2421(a). We agree with Armando that such misstatement of the evidence by the government is improper, as it injects a quantum of certainty into otherwise ambivalent testimony. We note, however, that after Armando objected to the government's mischaracterization of the testimony, the court provided a curative instruction by admonishing that "[t]he evidence is for the jury to decide who is properly recalling the facts. It is actually the jury's recollection

that controls." (12/15/17 Trial Tr. 122:18-21). Even more detrimental to Armando's argument is that there is extensive record evidence regarding his trip to Florida for prostitution purposes. See supra Section III(A)(2). Armando cannot establish prejudice because, regardless of the government's misrepresentation of Horne's testimony about Maryland, there was considerable evidence regarding the Florida trip. Under these circumstances, we possess a "sure conviction" that the prosecutor's error did not contribute to the judgment or violate Armando's due process rights. See Zehrbach, 47 F.3d at 1265.

Armando next claims the prosecutor made an improper emotional appeal to the jury during rebuttal. He contends that Assistant United States Attorney Meredith Taylor ("AUSA Taylor") "began crying" while discussing the impact the charged offenses had on the prostitution victims, including victims who had not testified. (Doc. 480 at 12). AUSA Taylor emphatically denies any emotional outburst occurred.

Armando's contention is without merit. To be sure, the court did not witness AUSA Taylor "crying" or becoming overly emotional during her rebuttal. We further observe that neither defendant objected or sought a sidebar conference to raise this purported issue. Armando cannot prevail on his motion for a new trial by merely alleging an unfair emotional appeal by the government without objecting at trial or proffering any corroborating evidence. We will therefore deny the Rule 33 motion as it relates to this alternative basis for relief.

**IV.    Conclusion**

We will grant in part and deny in part Armando's motion (Doc. 481) for

judgment of acquittal and deny his motion (Doc. 479) for a new trial.  We will vacate

the conviction on Count 1 due to constructive amendment of the superseding

indictment and enter judgment of acquittal as to Count 5 due to insufficient

evidence.  The government may retry Armando on Count 1 of the superseding

indictment only.  We will deny in its entirety Armando's motion for a new trial.  An

appropriate order follows.


   /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        February 13, 2019